**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ALFRED BLEVINS**<br>**222 Honey Locust Ct.**<br>**Commercial Point, OH 43116** | : | |
| **Plaintiff,** | : | **Case No.** |
| **v.** | : | **Judge:** |
| **CITY OF COLUMBUS**<br>**DIVISION OF POLICE**<br>**120 Marconi Blvd.**<br>**Columbus, OH 43215** | : | |
| **Defendant.** | : | |

**COMPLAINT**

Now comes Plaintiff Alfred Blevins, by and through counsel, and for his Complaint against Defendant City of Columbus, hereby states as follows:

**PARTIES:**

1. Plaintiff Alfred Blevins is an individual residing in Franklin County, Ohio and was, at all times relevant, an employee of Defendant City of Columbus, assigned to the Department of Public Safety, Division of Police.
2. Defendant City of Columbus (hereinafter also referred to as "CPD") is a political subdivision of the State of Ohio located in Franklin County, Ohio and at all times relevant herein was Plaintiff's employer.

**JURISDICTION AND VENUE:**

3. Subject matter jurisdiction over this action is conferred pursuant to 28 U.S.C. §1331 because the action arises under the laws of the United States, and supplemental jurisdiction

over the Plaintiff's state law claims is conferred pursuant to 28 U.S.C. §1367 because the federal and state law claims form part of the same case or controversy under Article III of the U.S. Constitution.

4. Venue is proper in the United States District Court for the Southern District of Ohio, Eastern Division, because the Plaintiff was employed by the City of Columbus in Franklin County, Ohio. Furthermore, all the events giving rise to Plaintiff's claims occurred within the Southern District of Ohio.

**BACKGROUND FACTS:**

5. Plaintiff Officer Alfred Blevins (hereinafter Plaintiff) has complied with all jurisdictional prerequisites to the filing of this lawsuit, and his Complaint is filed within ninety (90) days of Plaintiff's receipt of his Notice of Rights letter from the Equal Employment Opportunity Commission which is attached as Exhibit A. The charge was dual filed with the Ohio Civil Rights Commission.
6. Plaintiff is a heterosexual, white male.
7. Defendant City of Columbus is an employer with fifteen or more employees.
8. Plaintiff was hired by CPD as a patrol officer on July 13, 2020.
9. From April 2022 until October 2024 Plaintiff was assigned to the 13th Precinct Substation.
10. Beginning in 2022 Plaintiff was reporting to Sergeant Dylan Evans.
11. Evans' management style was to lead by intimidation and bullying.
12. Evans was/is known for making crude, demoralizing, sexually charged, and discriminatory statements many of which were directed at Plaintiff, including,
    - "did you fuck your wife today?"
    - asking Plaintiff, "are you gay?"

- referring to Plaintiff as the "faggot who drives the Tesla"
- regarding a trip Plaintiff made to Thailand, Evans asked, "how many lady boys did you fuck over there?"
- Evans openly and publicly questioned whether Plaintiff and his partner "are fucking, or what?"

13. Evans frequently singled Plaintiff out for closed-door meetings during which he would verbally berate Plaintiff, scream at him, and call him names.
14. On or about November 4th, 2024, Blevins met with Sgt. Evans and confronted him about his behavior. Evans told Blevins he wanted Blevins to leave the unit.
15. Evans admitted to openly questioning whether Blevins and Orsini were having an affair.
16. After meeting with Evans, Blevins spoke with Sgt. Hand about his EEO concerns.
17. On or about November 6, 2024, Sgt. Hand relayed Plaintiff's EEO complaints to the EEO Compliance Office.
18. Blevins complained that Evans was engaged in severe and pervasive harassment which interfered with Plaintiff's ability to perform the duties of his position.
19. Plaintiff detailed Evans' sexual commentary, homophobic slurs, and ethnic mockery.
20. The last straw for Plaintiff was when Evans started a rumor about Plaintiff having an affair with Officer Orsini because they both took the same day off work.
21. Officer Orsini joined Plaintiff, filing her own EEO complaint against Evans.
22. On or about November 4, 2024, Sgt. Evans began conducting a sick leave abuse investigation against Blevins and Orsini stemming from the day (October 19, 2024) when both Blevins and Orsini called off sick.

23. Sgt. Evans was then reassigned to a different Precinct during the investigation of Blevins and Orsini's EEO complaint.

24. Sgt. Paul Parsons was assigned to take Sgt. Evans' place as supervisor in the 13th Precinct.

25. One day after learning about the EEO complaint filed by Blevins and Orsini, Parsons made several policy and schedule changes which he stated were designed to address the turmoil in the 13th Precinct.

26. In reality, these changes were designed to punish Blevins and Orsini for their complaint by turning their co-workers against them.

27. Amongst patrol officers and supervisory officers, there is a strong and generally well-known taboo against filing EEO complaints.

28. Parsons was subsequently reassigned pending investigation of retaliation.

29. Sgt. Stephanie Lubell took Sgt. Parsons' place as supervisor of the 13th Precinct.

30. Lubell picked up the sick leave abuse investigation started by Evans before his reassignment but was ordered to delay the investigation because of the pending EEO complaint.

31. Within weeks of filing his charge against Sgt. Evans, a sexual harassment charge was filed against Plaintiff by Sgt. Lubell on behalf of Officer Donnelle Rodriguez.

32. Sgt. Lubell is a close friend and confidant of Sgt. Evans.

33. Upon information and belief, this sexual harassment complaint, made on Rodriguez's behalf, was solicited by Sergeant Evans and/or Sgt. Lubell.

34. Plaintiff was immediately removed from the 13th Precinct and reassigned to the 8th Precinct where he was specifically excluded from working in Zone 5.

35. The Columbus City Office of EEO Compliance investigated Plaintiff's complaint against Evans as well as the sexual harassment charge filed by Rodriguez against Plaintiff.
36. Allison Lippman, Asst. Director of EEO Compliance, handled both investigations. Lippman characterized Rodriguez's complaint as a "cross-complaint" to the complaint filed by Blevins, thereby recognizing that the Rodriguez complaint was a response to the Blevins and Orsini complaints.
37. Lippman interviewed all (or nearly all) officers assigned to Precinct 13 and reviewed documents submitted by the parties and witnesses.
38. On or about January 3, 2025, Lippman submitted her investigative report and supporting documentation.
39. Lippman found there was a preponderance of evidence that Sgt. Evans violated several work-rules and policies, including a violation of the City's Anti-harassment policy.
40. Lippman found that the retaliation allegations against Sgt. Parsons were sustained.
41. As to the EEO cross-complaint filed on behalf of Officer Rodriguez, Lippman found that there was NOT a preponderance of evidence to support those allegations.
42. On January 20, Sgt Lubell submitted objections to Lippman's investigation of the Rodriguez cross-complaint and requested that the investigation be returned to HR for further investigation.
43. On January 27, 2025, Lubell revived the sick leave abuse investigation against Plaintiff and transferred the allegations to Internal Affairs.
44. On June 16, 2025, Plaintiff filed an EEOC charge alleging discrimination and retaliation.
45. Citing the pretext of the Internal Affairs sick leave abuse investigation, Plaintiff was relieved of duty on October 13, 2025.

46. Sick leave abuse investigations are generally handled by supervisors and are NOT routinely, if ever, referred to Internal Affairs.

47. Plaintiff was assigned to police headquarters (known as "580"). He was relieved of his badge and gun, and not permitted to perform any police duties, including special duty assignments.

48. A 580 assignment is a form of punishment which places officers in a "fishbowl" like environment performing little or no meaningful work.

49. Because of Lubell's request for review of the Rodriguez cross-complaint, the EEO Compliance office revisited the Lippman investigation assigning the Assistant Director of EEO Compliance (Dr. Deric Hall) to determine whether the investigation was handled properly.

50. On May 20, 2025 Hall determined that there was no new evidence or material errors or omissions that warranted reopening the case for further investigation. Nevertheless, contrary to Lippman's findings, he concluded that Plaintiff had violated City of Columbus Anti-Harassment and Sexual Harassment policy and recommended discipline.

51. In November 2025, Plaintiff was inexplicably ordered by Lt. Halibur that he was not permitted to contact any of his fellow patrol officers or the Sergeants working at Precinct 13.

52. Halibur offered no explanation for this order.

53. On or about March 13, 2026 Plaintiff was called to a Chief's hearing to address the allegations of untruthfulness raised during the internal affairs, sick leave abuse investigation and the alleged sexual harassment policy violation.

54. All charges related to the sick leave abuse investigation, including the allegations of dishonesty, were dismissed and the sexual harassment policy violation was reduced to a conduct unbecoming an officer violation for which Plaintiff was issued a written reprimand.
55. After 12 months assigned to the "fishbowl" Plaintiff should have been returned to regular duty.
56. However, on March 19, 2026, Plaintiff was once again relieved of duty, this time arising out of an investigation related to unknown/undisclosed charges.
57. Plaintiff has not been advised of the nature of the new allegations made against him nor has he been interviewed.
58. He is not permitted to work as a patrol officer, including accepting special duty assignments and working overtime.
59. Plaintiff received a Notice of Rights Letter from the EEOC on July 15, 2026.

**COUNT I**
**RETALIATION IN VIOLATION OF**
**TITLE VII OF THE FEDERAL CIVIL RIGHTS ACT**

60. Plaintiff restates and incorporates the foregoing allegation as if fully rewritten herein.
61. Pursuant to Title VII of the Federal Civil Rights Act it is unlawful for an employer to retaliate against an employee who engages in "protected activity" as that term is defined by the Act.
62. When Plaintiff confronted Evans about his harassing and discriminatory behavior, Plaintiff was engaged in "protected activity" as that term is defined by Title VII of the Federal Civil Rights Act..

63. When Plaintiff spoke to Sgt. Hand about his EEO concerns, Plaintiff was engaged in "protected activity" as that term is defined by Title VII of the Federal Civil Rights Act.

64. When Plaintiff filed his internal EEO complaint he was engaged in "protected activity" as that term is defined by Title VII of the Federal Civil Rights Act.

65. When Plaintiff gave a statement in support of Officer Orsini's internal EEO complaint, he was engaged in "protected activity" as that term is defined by Title VII of the Federal Civil Rights Act.

66. When Plaintiff filed his EEOC charge he was engaged in "protected activity" as that term is defined by Title VII of the Federal Civil Rights Act.

67. Defendant was aware of Plaintiff's "protected activity".

68. Defendant retaliated against Plaintiff for engaging in protected activity by filing a "cross-complaint" alleging sexual harassment against him.

69. Plaintiff was reassigned and faced an extensive investigation because of the complaint and was not permitted to work in his previous Zone.

70. Defendant retaliated against Plaintiff for engaging in protected activity by changing well-established work rules within his Precinct designed to turn his fellow officers against him and to reinforce the taboo against filing an EEO complaint.

71. Defendant retaliated against Plaintiff for engaging in protected activity by pursuing a sick leave abuse investigation against him and alleging that he made less-than-truthful statements when interviewed about the allegations.

72. Defendant retaliated against Plaintiff by re-opening the investigation of the cross-complaint made against him even though the initial investigation was handled appropriately and there was no new evidence against Plaintiff.

73. Plaintiff was relieved from duty from October 2025 until March 2026.
74. In March 2026, the "dishonesty" charges against him were dismissed and he received a written warning for conduct unbecoming an officer related to the Rodriguez/Lubell "cross complaint".
75. In or about March 2026 Defendant retaliated against Plaintiff for engaging in protected activity by launching another investigation against Plaintiff related to unknown/unrevealed charges.
76. Plaintiff remains in a "relieved from duty" status as of this date.
77. Defendants' own internal investigations determined that the subject of Plaintiff's EEO complaint (Sgt. Evans) did engage in behavior that violated Defendant's policies.
78. Evans initiated the abuse of sick leave investigation immediately after Blevins confronted Evans about his discriminatory and abusive behavior.
79. Defendant's own internal investigation found that the Sergeant who relieved Evans as Plaintiff's supervisor (Sgt. Parsons) engaged in retaliation when he changed work rules at Precinct 13.
80. The cross complaint filed against Blevins was initiated by Sgt. Stephanie Lubell who relieved Parsons as Plaintiff's supervisor.
81. Lubell revived the sick leave abuse investigation initiated by Evans and was also the witness who cast doubt on Plaintiff's statement regarding sick leave abuse.
82. Lubell also retaliated by initiating a separate Internal Affairs investigation related to a domestic violence call.
83. Subjecting Plaintiff to ridicule from his fellow officers for filing an EEO complaint, transferring Plaintiff to a different Precinct, relieving Plaintiff from duty, subjecting

Plaintiff to endless and ongoing investigations, and ordering Plaintiff not to speak with his co-workers are all adverse acts which have a "chilling effect" and would deter any reasonable person from engaging in protected activity thereby reinforcing the taboo against filing EEO Complaints.

84. There are no legitimate, non-retaliatory, reasons that justify Defendants adverse actions against Plaintiff.

85. Plaintiff has been damaged by Defendants retaliatory and unlawful acts of retaliation and has incurred significant compensatory damages including, but not limited to, lost wages and fringe benefits, promotional opportunities, as well as anxiety and emotional distress.

**COUNT II**
**RETALIATION IN VIOLATION OF**
**OHIO REVISED CODE §4112, *et. seq.***

86. Plaintiff restates and incorporates the foregoing allegation as if fully rewritten herein.

87. Pursuant to Ohio Revised Code §4112.02 (I), it is unlawful for "any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code," *also known as* "protected activity."

88. When Plaintiff confronted Evans about his harassing and discriminatory behavior, Plaintiff was engaged in "protected activity" as that term is defined by Ohio law.

89. When Plaintiff spoke to Sgt. Hand about his EEO concerns, Plaintiff was engaged in "protected activity" as that term is defined by Ohio law.

90. When Plaintiff filed his internal EEO complaint he was engaged in “protected activity” as that term is defined by Ohio law.

91. When Plaintiff gave a statement in support of Officer Orsini’s internal EEO complaint, he was engaged in “protected activity” as that term is defined by Ohio law.

92. When Plaintiff filed his EEOC charge he was engaged in “protected activity” as that term is defined by Ohio law.

93. Defendant was aware of Plaintiff’s “protected activity”.

94. Defendant retaliated against Plaintiff for engaging in protected activity by filing a “cross-complaint” alleging sexual harassment against him.

95. Plaintiff was reassigned and faced an extensive investigation because of the complaint and was not permitted to work in his previous Zone.

96. Defendant retaliated against Plaintiff for engaging in protected activity by changing well-established work rules within his Precinct designed to turn his fellow officers against him and to reinforce the taboo against filing an EEO complaint.

97. Defendant retaliated against Plaintiff for engaging in protected activity by pursuing a sick leave abuse investigation against him and alleging that he made less-than-truthful statements when interviewed about the allegations.

98. Defendant retaliated against Plaintiff by re-opening the investigation of the cross-complaint made against him even though the initial investigation was handled appropriately and there was no new evidence against Plaintiff.

99. Plaintiff was relieved from duty from October 2025 until March 2026.

100. In March 2026, the "dishonesty" charges against him were dismissed and he received a written warning for conduct unbecoming an officer related to the Rodriguez/Lubell "cross complaint".

101. In or about March 2026 Defendant retaliated against Plaintiff for engaging in protected activity by launching another investigation against Plaintiff related to unknown/unrevealed charges.

102. Plaintiff remains in a "relieved from duty" status as of this date.

103. Defendants' own internal investigations determined that the subject of Plaintiff's EEO complaint (Sgt. Evans) did engage in behavior that violated Defendant's policies.

104. Evans initiated the abuse of sick leave investigation immediately after Blevins confronted Evans about his discriminatory and abusive behavior.

105. Defendant's own internal investigation found that the Sergeant who relieved Evans as Plaintiff's supervisor (Sgt. Parsons) engaged in retaliation when he changed work rules at Precinct 13.

106. The cross complaint filed against Blevins was initiated by Sgt. Stephanie Lubell who relieved Parsons as Plaintiff's supervisor.

107. Lubell revived the sick leave abuse investigation initiated by Evans and was also the witness who cast doubt on Plaintiff's statement regarding sick leave abuse.

108. Lubell also retaliated by initiating a separate Internal Affairs investigation related to a domestic violence call.

109. Subjecting Plaintiff to ridicule from his fellow officers for filing an EEO complaint, transferring Plaintiff to a different Precinct, relieving Plaintiff from duty, subjecting Plaintiff to endless and ongoing investigations, and ordering Plaintiff not to speak with his

co-workers are all adverse acts which have a "chilling effect" and would deter any reasonable person from engaging in protected activity thereby reinforcing the taboo against filing EEO Complaints.

110. There are no legitimate, non-retaliatory, reasons that justify Defendants adverse actions against Plaintiff.

111. Plaintiff has been damaged by Defendants retaliatory and unlawful acts of retaliation and has incurred significant compensatory damages including, but not limited to, lost wages and fringe benefits, promotional opportunities, as well as anxiety and emotional distress.

**COUNT III**
**DISCRIMINATION BASED UPON SEX/**
**SEXUAL ORIENTATION IN VIOLATION**
**OF TITLE VII**

112. Plaintiff restates and incorporates the foregoing paragraphs as if fully rewritten herein.

113. Title VII of the Federal Civil Rights Act makes it unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's sex, including sexual orientation.

114. Sgt. Evans discriminated against Plaintiff because he perceived Plaintiff as gay.

115. Sgt. Evans discriminated against Plaintiff because he failed to conform to gender stereotypes, for example, Evans believed Blevins' car was not masculine.

116. Evans subjected Plaintiff to severe or pervasive harassment because of this perception, including calling Plaintiff derogatory and disparaging names, such as "faggot,"

and by frequently questioning Plaintiff's sexual activity, including asking Plaintiff, "how many lady boys he fucked" while in Thailand.

117. Evans subjected Blevins to these derisive and humiliating comments on nearly a daily basis.

118. Evans's relentless discriminatory behavior interfered with Plaintiff's ability to perform the duties of his position as a patrol officer.

119. Plaintiff has been damaged by Defendant's discriminatory and unlawful acts and has incurred significant compensatory damages including, but not limited to, lost wages and fringe benefits, promotional opportunities, as well as anxiety and emotional distress.

**WHEREFORE**, Plaintiff respectfully demands judgement against Defendant City of Columbus, including an award of back pay, compensatory damages, and punitive damages in an amount to be determined at trial but in excess of $75,000, plus prejudgment and post-judgement interest, and such other and further relief this Honorable Court deems appropriate and just, including an award of attorneys' fees and costs.

Respectfully submitted,

*/s/ Sharon Cason-Adams*
Sharon Cason-Adams (0067550)
Agee Clymer Mitchell & Portman
140 East Town Street, Suite 1100
Columbus, OH 43215
Telephone: 614-221-3318
Facsimile: 614-221-7308
scasonadams@ageeclymer.com
Attorney for Plaintiff

**JURY DEMAND**

Plaintiff hereby demands that a jury decide all claims in this Complaint.

*/s/ Sharon Cason-Adams*
Sharon Cason-Adams (0067550)